UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| **Mary G. Milliken**, | ) | C/A No. 1:07-115-RBH-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Rossie Reid; | ) | |
| Aiken Barnwell Medical Center, aka Poly Best Mental Center; | ) | |
| Barnwell County Probate Judge Branna Woodward Williams; | ) | |
| County of Barnwell, State of South Carolina; | ) | |
| Medical University of South Carolina; | ) | |
| Stephen McLoed-Bryant, M.D.; | ) | |
| Sagar Patel, M. D.; | ) | |
| Philip Claytor, M. D.; | ) | |
| Barnwell County Hospital; | ) | |
| Dorchester County Probate Judge Provence; and | ) | |
| Verneida Hill, Esq., | ) | |
| | ) | |
| Defendant(s). | ) | |
| _____ | ) | |

This is a civil action filed *pro se* by the Plaintiff against numerous Defendants. This is the second lawsuit that Plaintiff has filed in this Court in less than one year against many of the same Defendants and containing strikingly similar allegations of wrongdoing by those Defendants. *See* Milliken v. NFN BWW, Civil Action No. 1:06-263-RBH.

The Complaint filed in this case contains over fifty (50) pages of allegations and contentions and names eleven persons and/or entities as Defendants. (Entry 1).[1] The gist of Plaintiff's often-rambling contentions is that many of her federal constitutional rights were violated by the various

---

[1] Although some other individuals are referenced within the body of the Complaint, the eleven individuals and entities listed as Defendants in the caption of this Report and Recommendation are the only individuals and entities listed as Defendants by Plaintiff in the caption of her Complaint. Thus, these eleven individuals and entities are the only Defendants recognized for purposes of this Report and Recommendation. *See* Fed.R.Civ.P. 10(a).



1

Defendants as a result of their involvement in and connection with an involuntary mental health commitment proceeding in the probate court of Barnwell County, South Carolina in January 2004. Plaintiff claims that two probate court judges, an employee of the South Carolina Department of Mental Health, Plaintiff's own court-appointed counsel/guardian-ad-litem, numerous private physicians, and several state and county hospitals and agencies all conspired to wrongfully commit her for mental health treatment. She also claims that, while so committed, the treating physicians did not properly treat her and lied about her mental health status in order to keep her committed.

Plaintiff seeks compensatory and punitive damages in varying amounts from each Defendant. With respect to this Court's subject-matter jurisdiction over her claims, Plaintiff references several amendments to the United States Constitution; 42 U.S.C. §§ 1981, 1983, 1985;[2] and diversity.

## Discussion

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint filed by the Plaintiff in this case. The review was conducted pursuant to 28 U.S.C. § 1915 (as amended), other provisions in the Prison Litigation Reform Act, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319 (1989); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *see*

---

[2] Sections 1981 and 1985 do not provide a basis for the exercise of federal question jurisdiction (28 U.S.C. § 1331) over Plaintiff's claims because, despite her numerous allegations about "conspiracy" and "constitutional rights," she does not allege anywhere in her Complaint that she is a member of any discrete, protected class of individuals or that the Defendants discriminated against her as a result of her membership in such discrete class. *See* Simmons v. Poe, 47 F.3d 1370 (4th Cir. 1995) (§ 1985); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63 (6th Cir. 1985) (§ 1981).



2

Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972); *see* Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). Even under this less stringent standard, however, the Complaint filed in this case is subject to summary dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See* Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990).[3]

As stated previously, despite some re-wording and re-organization, this case is essentially the same case that Plaintiff filed against most of the same Defendants in this Court nearly one year ago. That case was summarily dismissed for lack of jurisdiction over Plaintiff's claims, and a comparison of the Complaint filed in this case and that filed in Civil Action No. 1:06-263-RBH discloses essentially similar claims and allegations in both documents. *See* Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)(a federal court may take judicial notice of the contents of its own records). Hence, this case is subject to summary dismissal for lack of subject matter jurisdiction for the same reasons (Rooker-Feldman, immunity, lack of state action, absence of diversity) that the complaint filed in Civil Action No. 1:06-263-RBH was subject to summary dismissal. *See* Aloe Creme Laboratories, Inc. v. Francine Co., where the United States Court of Appeals for the Fifth Circuit commented:

> The District Court clearly had the right to take notice of its own files and

---

[3] The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), or construct Plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).



records and it had no duty to grind the same corn a second time. Once was sufficient. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d at 1296; s*ee also* United States v. Parker, 956 F.2d 169, 171(8th Cir. 1992).

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). Since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999)(*citing* Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 337 (1895)). Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." Bulldog Trucking, 147 F.3d at 352; *see* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

"[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988)(*citing* McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936)). To this end, Federal Rule of Civil Procedure 8(a)(1) requires that the complaint provide "a short plain statement of the grounds upon which the court's jurisdiction depends[.]" If, however, the complaint does not contain "an affirmative pleading of a jurisdictional basis, the federal court may [still] find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." Pinkley, Inc., 191 F.3d at 399 (*citing* 2 Moore's Federal Practice § 8.03[3] (3d ed. 1997)).

Generally, a case can be originally filed in a federal district court if there is diversity of citizenship under 28 U.S.C. § 1332 or there if there is so-called "federal question" jurisdiction under 28 U.S.C. § 1331. Although the absence of subject matter jurisdiction may be raised at any time



4

during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. *See* Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). If the court, viewing the allegations in the light most favorable to the plaintiff, finds insufficient allegations in the pleadings, the court will lack subject matter jurisdiction. Id. Here, although the Complaint has many allegations, in light of the following analysis, there is no factual or legal basis for this Court to exercise its limited jurisdiction in this case.

### 1. NO DIVERSITY JURISDICTION

In support of her contention that diversity jurisdiction is available in this case, Plaintiff references the residence of an "S. Shamsi, M.D." in Georgia. (Complaint, at 4). However, although there are references to a "S. Shamsi, M.D." as a "co-defendant and co-conspirator" within the body of the Complaint, Plaintiff does not list Dr. Shamsi as a Defendant in the caption of the Complaint filed in this case. As a result, there is no "S. Shamsi, M.D." listed on the docket of this case as a Defendant herein even though he was named as a defendant on the docket of Plaintiff's previous case. *See* Fed.R.Civ.P. 10(a)(The caption of the complaint "shall include the names of all parties . . . ."). Further, even if Dr. Shamsi had been properly made a Defendant in this case, his out-of-state residence alone would not establish a basis for the exercise of diversity jurisdiction in this case because all of the other Defendants and the Plaintiff live in South Carolina. The diversity statute, 28 U.S.C. § 1332(a), requires ***complete*** diversity of parties, and complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. *See* Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 372-74 & nn. 13-16 (1978). Therefore, even if Plaintiff had properly named Dr. Shamsi as one of the Defendants in this case, that would not have provided this Court with diversity jurisdiction since there are also South Carolina residents named as co-Defendants, thus precluding a finding of complete diversity.



The bulk of Plaintiff's allegations, liberally construed, raise state-law-based claims against the Defendants, such as medical and/or legal malpractice, fraud, defamation, malicious prosecution and false imprisonment.[4]  In the absence of diversity of citizenship jurisdiction, these types of claims fall outside the limited jurisdiction of this Court.  *See* Cianbro Corporation v. Jeffcoat and Martin, 804 F. Supp. 784, 788-91 (D.S.C. 1992).  Although federal courts faced with claims that fall within the courts' federal question jurisdiction, see 28 U.S.C. § 1331, have discretion to decide pendent state law claims *if* the federal and state claims arise out of a common nucleus of operative fact, "[i]f the federal claims are dismissed before trial ... the state claim[s] should be dismissed as well." Webb v. McCullough, 828 F.2d 1151, 1160 (6th Cir. 1987).  *See* United Mine Workers v. Gibbs, 383 U.S. 715 (1966).  Because, as stated below, Plaintiff fails to state a viable claim cognizable under this Court's federal question jurisdiction against any Defendant, this Court should dismiss all the state law claims stated in the Complaint without prejudice so that Plaintiff may pursue her remedies in an appropriate state forum should she choose to do so.[5]

---

[4] False imprisonment, like defamation and malicious prosecution, is a common-law intentional tort.  *See* Camden v. Hilton, 360 S.C. 164, 170, 600 S.E.2d 88, 91 (Ct. App. 2004); State Farm Fire and Cas. Co. v. Barrett, 340 S.C. 1, 10-11, 530 S.E.2d 132, 137 (Ct. App. 2000). Generally, such common-law torts are a matter of state law to be heard in the state courts, unless diversity of citizenship is present.  *See* Owen Equip. & Erection Co., 437 U.S. at 370-72.

[5] Although it is not clear from Plaintiff's allegations, it appears from a letter made an exhibit to the Complaint that Plaintiff might already be involved in state court proceedings in the Barnwell County Court of Common Pleas which she believes are being unreasonably delayed.  The state court proceeding is where Plaintiff needs to present her state-law-based claims of medical and/or legal malpractice, fraud, defamation, malicious prosecution and false imprisonment. Indeed, she can also present her federal constitutional claims in that proceeding since § 1983 provides for concurrent jurisdiction.  *See, e.g.*, Westside Quick Shop, Inc. v. Stewart, 534 S.E.2d 270 (S.C. 2000); Brown v. Evatt, 470 S.E.2d 848 (S.C. 1996); *see also* Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 116-17 (1981)(willingness of state court to hear § 1983 claims cited by Court in support of adequacy of state remedies).  In fact, if Plaintiff is already pursuing state court proceedings based on the same facts and involving some or all of the same parties, this provides another legal reason for this Court to dismiss this case: the abstention doctrine.  *See* Fair Assesment in Real Estate Ass'n v. McNary (§ 1983 damages action barred where state court action in which constitutional claims may be remedied is pending); *see also* Younger v. Harris, 401 U.S. 37 (1971)(federal court may enjoin state court proceedings only in limited circumstances); Lynch v. Snepp, 472 F.2d 769 (4th Cir.



## 2. NO FEDERAL QUESTION JURISDICTION

The essential allegations of the Complaint are insufficient to show that the case is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. That is, the Complaint does not state a viable claim against any Defendant cognizable under this Court's "federal question" jurisdiction. Even though the Complaint alleges that some of Plaintiff's federal constitutional rights were violated by and as a result of a 2004 involuntary commitment proceeding in the probate court for Barnwell County[6] and that her claims can be heard by this Court pursuant to 42 U.S.C. § 1983, this Court is not bound by such allegations and is entitled to disregard them if the facts do not support Plaintiff's contentions or if claims based on such allegations are legally barred. When considering the issue of whether a case is one "arising under the Constitution . . ." or, in other words, whether "federal question" jurisdiction is present, a federal court is not bound by the parties' characterization of a case. District courts are authorized to disregard such characterizations to avoid "unjust manipulation or avoidance of its jurisdiction." *See* Lyon v. Centimark Corp., 805 F. Supp. 333, 334-35 (E.D. N.C. 1992); *see also* Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908); *cf.* Gully v. First Nat'l Bank in Meridian, 299 U.S. 109

---

1973)("'[P]endency of state proceedings is one of the most important criteria in determining whether federal court intervention is appropriate); Taylor v. Traintor, 83 U.S. (16 Wall.) 366, 370 & n. 8 (1873)("Where a state court and a Federal Court may each take jurisdiction, the tribunal which first gets jurisdiction holds it to the exclusion of the other, until its duty is fully performed and jurisdiction invoked is exhausted, and such rule applies alike in both civil and criminal cases.")

[6]There was, apparently, a court case opened in Barnwell County Probate Court in connection with Plaintiff's involuntary commitment; however, due to privacy concerns, such case records (even including the case numbers) are not available to the public. Plaintiff has not provided any type of detailed information about the probate court action, other than to claim that proper procedures were not followed and false testimony was presented, in her opinion. As a result, the undersigned must presume that the type of court proceedings contemplated under the applicable State of South Carolina statutes, *see* S.C. Code Ann § §44-17-410-460 (1976)(involuntary commitment process), were conducted in Barnwell County and that, based on the evidence presented, the probate court found that Plaintiff's condition met the criteria for involuntary commitment.



(1936)("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."); Bonner v. Circuit Ct. of St. Louis, 526 F.2d 1331, 1336 (8th Cir. 1975)(federal constitutional claims are cognizable in both state courts and in federal courts: "Congress and the federal courts have consistently recognized that federal courts should permit state courts to try state cases, and that, where constitutional issues arise, state court judges are fully competent to handle them subject to Supreme Court review.").

### A. ROOKER-FELDMAN DOCTRINE

Assuming *arguendo* that Plaintiff's allegations about wrongdoing connected to her involuntary commitment are sufficient to permit this Court to exercise its federal question jurisdiction pursuant to 42 U.S.C. § 1983 in this case, the Complaint is, nevertheless, still subject to summary dismissal under the Rooker-Feldman doctrine. This is true because a ruling in favor of the Plaintiff on any claim of constitutional violations arising from her involuntary commitment for mental health care would necessarily require this Court to review and possibly overturn legal rulings made in 2004 and thereafter by the Barnwell County probate court. *See* Shooting Point, L.L.C. v. Cumming, 368 F.3d F.3d 379, 382-84 (4th Cir. 2004); Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir.1997); *see also* Gulla v. North Strabane Township, 146 F.3d 168, 171 (3d Cir. 1998); Jones v. Crosby, 137 F.3d 1279, 1280 (11th Cir. 1998); Moccio v. N. Y. State Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996).

By claiming that proper statutory procedures were not followed, that false and/or insufficient evidence was presented to the probate judges, and that the probate court's judgment is "null and void," Plaintiff is, in essence, requesting this Court to review the probate court proceedings as would an appellate court. However, the proceedings and rulings made in the Probate Court of Barnwell County cannot be reviewed or set aside by the United States District Court for the District of South



Carolina in this case. *See* <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476-82 (1983)( a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257.).[7]  *See* <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923).  This prohibition on review of state court orders by federal district courts is commonly referred to as the <u>Rooker</u>-<u>Feldman</u> doctrine or the <u>Feldman</u>-<u>Rooker</u> doctrine.  *See*, *e.g.*, <u>Exxon Mobile Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005);  <u>Davani v. Va. Dep't of Transport.</u>, 434 F.3d 712 (4th Cir. 2006); <u>Ivy Club v. Edwards</u>, 943 F.2d 270, 284 (3d Cir. 1991).  Because the <u>Rooker-Feldman</u> Doctrine is jurisdictional it may be raised by the Court *sua sponte*.  <u>American Reliable Ins. Co. v. Stillwell</u>, 336 F.3d 311, 316 (4th Cir. 2003).

Longstanding precedents preclude the United States District Court for the District of South Carolina from reviewing the findings or rulings made by the South Carolina State Courts. The <u>Rooker-Feldman</u> Doctrine applies to bar the exercise of federal jurisdiction even when a challenge to state court decisions or rulings concerns federal constitutional issues such as those arguably contained in Plaintiff's Complaint in this case.  *See* <u>Arthur v. Supreme Court of Iowa</u>, 709 F. Supp. 157, 160 (S.D. Iowa 1989).  The doctrine also applies even if the state court litigation has not reached a state's highest court.  *See*  <u>Worldwide Church of God v. McNair</u>, 805 F.2d 888, 893 & nn. 3-4 (9th Cir. 1986); *see also* 28 U.S.C. § 1738 (federal court must accord full faith and credit to state court judgment); <u>Robart Wood & Wire Prods. v. Namaco Indus.</u>, 797 F.2d 176, 178 (4th Cir. 1986).

---

[7]Appeals of orders issued by lower state courts must go to a higher state court.  Secondly, the Congress, for more than two hundred years, has provided that only *the Supreme Court of the United States* may review a decision of a state court in a direct appeal.  28 U.S.C. § 1257.  In civil, criminal, and other cases, the Supreme Court of the United States has reviewed decisions of the Supreme Court of South Carolina that were properly brought before it under 28 U.S.C. § 1257 or that statute's predecessors.  *E.g.* , <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003 (1991).



Plaintiff's submission of the Complaint in this case – claiming a right to compensatory and punitive damages for federal constitutional violations by various state court judges, legal counsel, state agencies and employees, and medical facilities and personnel – does not alter the fact that Plaintiff is, in reality, attempting to have this Court review the proceedings that took place in connection with and as the result of an involuntary commitment action in the Probate Court of Barnwell County.  Plaintiff claims that the judgment was "null and void," that its entry violated her constitutional rights, and that, as a result, all actions undertaken thereafter by any Defendant under authority of or as a result of that judgment violated her constitutional rights.  As stated above, this Court cannot review the Barnwell County proceedings.  *See* Anderson v. Colorado, 793 F.2d 262, 263 (10th Cir. 1986)("[I]t is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review."); Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986)(principles barring review by federal district courts of state court decisions are not limited to actions which "candidly seek review" of the state court decree, but extend to other actions where constitutional claims are inextricably intertwined with the state court's grant or denial of relief); *see also* Hagerty v. Succession of Clement, 749 F.2d 217, 219-20 (5th Cir. 1984)(collecting cases); Wise v. Bravo, 666 F.2d 1328, 1333 (10th Cir. 1981); Kansas Assen of Public Employees v. Kansas, 737 F. Supp. 1153, 1154 (D. Kan. 1990); Fuller v. Harding, 699 F. Supp. 64, 66-67 (E.D. Pa. 1988).  To rule in favor of Plaintiff on her constitutional claims would, necessarily, require this Court to overrule (or otherwise find invalid) various orders and rulings made in the Barnwell County Probate Court.  Such a result is prohibited under the Rooker-Feldman Doctrine.  Davani, 434 F.3d at 719-20; *see* Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 293-94; Shooting Point, L.L.C. v. Cumming, 368 F.3d at 382-84; Jordahl v. Democratic Party of Va., 122 F.3d at 201.



## B. OTHER REASONS FOR SUMMARY DISMISSAL

Furthermore, even if Rooker-Feldman did not completely remove all of Plaintiff's § 1983 claims from the jurisdiction of this Court, there are other reasons why many of those claims against many of the Defendants would still not be viable in this Court.  For example, any claim of constitutional violation by Judges Williams or Provence[8] in connection with their rulings or other judicial performance in the Barnwell County probate action resulting in Plaintiff's involuntary commitment and/or continued commitment is barred under the doctrine of judicial immunity.  *See* Mireles v. Waco, 502 U.S. 9 (1991); Stump v. Sparkman, 435 U.S. 349, 351-64 (1978); Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987)(a suit by South Carolina inmate against two Virginia magistrates); Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985)("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions.");  *see also* Siegert v. Gilley, 500 U.S. 226 (1991)(immunity presents a threshold question which should be resolved before discovery is even allowed); Burns v. Reed, 500 U.S. 478 (1991)(safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(absolute immunity "is an immunity from suit rather than a mere defense to liability").

The same result is required as to any § 1983 claim against Plaintiff's court-appointed guardian-ad-litem, Veneida Hill, because, as an adjunct of the probate court who performs duties in a case as directed by the court, the guardian-ad-litem is entitled to quasi-judicial immunity from damage claims such as Plaintiff's.  Fleming v. Asbill, 42 F.3d 886, 889 (4th Cir. 1994).  The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support

---

[8] Plaintiff indicates in the caption of her Complaint that Judge Provence is a Dorchester County probate judge, but within the body of the Complaint she indicates that he entered an order for continuing (6 months) commitment in the Barnwell County commitment case. Complaint, at 20.



11

personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'"  Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992), *quoting* Scruggs v. Moellering, 870 F.2d 376, 377 (7th Cir. 1989); *see also* Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir. 1980)(collecting cases on immunity of court support personnel).

Additionally, in order to state a claim for alleged constitutional violations under 42 U.S.C. § 1983, Plaintiff must show that the Defendant sued for such violations was a "person" who could, and did, act under color of state law.  *See* 42 U.S.C. § 1983; Monroe v. Page, 365 U.S. 167 (1961); *see generally* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1230 (2002).  It is well settled that only "persons" may act under color of state law; therefore, a defendant in a § 1983 action must qualify as a "person."  Based on these authorities, it is clear that neither Defendants Aiken Barnwell Medical Center, aka Poly Best Mental Center; Medical University of South Carolina; nor Barnwell County Hospital are properly sued under 42 U.S.C. § 1983 because they are all a group of buildings and/or facilities, not persons.  Inanimate objects such as buildings, facilities, and grounds do not act under color of state law.  *See* Allison v. California Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D. Va. 1999)("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301(E.D. N.C. 1989)("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.").

Furthermore, to the extent that Plaintiff claims that the Defendant Hill violated her constitutional rights in connection with Hill's performance as a public defender on Plaintiff's behalf



12

in the probate court action, she states no viable § 1983 claim against Hill.  An attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983.  *See* Deas v. Potts, 547 F.2d 800 (4th Cir. 1976)(private attorney); Hall v. Quillen, 631 F.2d 1154, 1155-56 & nn. 2-3 (4th Cir. 1980)(court-appointed attorney); Polk County v. Dodson, 454 U.S. 312, 317-24 & nn. 8-16 (1981)(public defender).

With respect to Defendant physicians McLoed-Bryant, Patel, and Claytor, who treated and/or examined Plaintiff during her involuntary commitment, Plaintiff's allegations against these Defendants do not disclose that they are anything except private doctors.  As a result, the Complaint fails to a claim under 42 U.S.C. § 1983 against these doctors because there is nothing in the Complaint from which it could be concluded that any of these Defendants in any way acted under color of state law when they treated or examined the Plaintiff.  In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: *(1)* the defendant(s) deprived him or her of a federal right, and *(2)* did so under color of state law.  *See* Gomez v. Toledo, 446 U.S. 635, 640 (1980).  Federal circuits that have considered the issue are unanimous in ruling that a private doctor who is involved with the involuntary commitment of a person pursuant to a state statute is not a "state actor" for purposes of § 1983 liability.  *See* Hall v. Quillen, 631 F.2d 1154, 1155-56  (4th Cir. 1980); *see also* Rockwell v. Cape Cod Hosp., 26 F.3d 254, 257 (1st Cir. 1994);  Dahl v. Akin, 630 F.2d 277, 282-83 (5th Cir.1980); Ellison v. Garbarino, 48 F.3d 192, 196 (6th Cir. 1995); Spencer v. Lee, 864 F.2d 1376 (7th Cir.1989); Harvev v. Harvev, 949 F.2d 1127 (11th Cir. 1992).) .

In any event, even if the Court could somehow conclude that these physicians are state actors for purposes of a § 1983 claim, none of Plaintiff's claims sounding in medical malpractice against the various medical personnel who have examined, treated, or otherwise cared for her in connection

13

with her involuntary commitment are sufficient to state a claim under § 1983. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Negligence, in general, is not actionable under § 1983. Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Pink v. Lester, 52 F.3d 73 (4th Cir. 1995)(applying Daniels v. Williams and Ruefly v. Landon: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct[.]"); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987). Nor does § 1983 impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-03 (1989). Although claims of negligence and medical malpractice are actionable under South Carolina law, *see* Roberts v. Hunter, 426 S.E.2d 797, 799-800 (S.C. 1993), as previously stated, such claims could only be considered by this Court under its diversity or pendent jurisdiction, which are clearly not available in this case.

Finally, Plaintiff fails to state any viable § 1983 damage claim against the Defendant Barnwell County, as this defendant is not responsible for actions taken by state courts within its borders. It can be judicially noticed that, in South Carolina, a county's authority over courts within its boundaries was abolished when Article V of the Constitution of the State of South Carolina was ratified in 1973. *See* Act No. 58, 1973 S.C. Acts 161; Article V, Section 1 of the Constitution of the State of South Carolina; and State ex rel. McLeod v. Civil and Criminal Court of Horry County, 265 S.C. 114, 217 S.E.2d 23, 24 (1975).[9] Under the current version of Article V, Section 1, the Supreme Court of South Carolina, not Barnwell County, retains the *sole* authority to supervise magistrates'

---

[9] County courts in the State of South Carolina no longer exist. Section 22 of Article V of the Constitution of the State of South Carolina (1973) allowed "any existing court" on the date of ratification to continue operating until Article V was fully implemented. See State ex rel. McLeod v. Civil and Criminal Court of Horry County, 217 S.E.2d at 24 ("The Horry County Court is one of the courts continued in existence solely by virtue of the provisions of Section 22 of Article V.").



14

courts, municipal courts in Barnwell County, and the Probate and Circuit Court for Barnwell County. *See* <u>Spartanburg County Dept. of Social Services v. Padgett</u>, 296 S.C. 79, 370 S.E.2d 872, 875-876 & n. 1 (1988). Consequently, Barnwell County is not a proper party defendant because it has no authority over the county court system and is not responsible for the alleged violations of plaintiff's rights.

In absence of federal question or diversity jurisdiction over Plaintiff's claims, this *pro se* case is subject to summary dismissal without service on any Defendant.[10] Nothing stated herein precludes Plaintiff from pursuing her state causes of action against any defendant in the apparently currently pending state court action she is involved in. *See* note 4 <u>supra</u>.

## RECOMMENDATION

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process. *See* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966); *see also* <u>Neitzke v. Williams</u>, 490 U.S. 319, 324-25 (1989); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

Plaintiff's attention is directed to the important notice on the next page.

Respectfully submitted,

Bristow Marchant
United States Magistrate Judge

January 25, 2007
Columbia, South Carolina

---

[10]Although Plaintiff's allegations against Defendant Rossie Reid are sufficient to show that she was a state actor in connection with her involvement in the commitment process and that she is not entitled to any form of immunity, as stated above, the <u>Rooker-Feldman</u> doctrine precludes Plaintiff's claims of constitutional violations against *all* Defendants, including Reid.



15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).



16